UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOANNE GUARDINO,

                            **Plaintiff,**

  vs.                                                 5:17-CV-454
                                                      (MAD/TWD)

ALUTIIQ DIVERSIFIED SERVICES, LLC;
PEAK INDUSTRIES, INC.,

                            **Defendants,**

---

PEAK INDUSTRIES, INC.,

                            **Cross-Claimant,**

  vs.

ALUTIIQ DIVERSIFIED SERVICES, LLC,

                            **Cross-Defendant.**

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **CHERUNDOLO LAW FIRM, PLLC**<br>AXA Tower One 17th Floor<br>100 Madison Street<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **ROBIN C. ZIMPEL-FONTAINE, ESQ.**<br>**JOHN C. CHERUNDOLO, ESQ.**<br>**PETER C. PAPAYANAKOS, ESQ.** |
| **RUSSO & TONER, LLP**<br>33 Whitehall Street, 16th Floor<br>New York, New York 10004<br>Attorneys for Defendant Alutiiq Diversified<br>Services, LLC | **KEVIN G. HORBATIUK, ESQ.** |
| **RUSSO & TONER, LLP - BUFFALO OFFICE**<br>12 Fountain Plaza, Suite 600<br>Buffalo, New York 14202<br>Attorneys for Defendant Alutiiq Diversified<br>Services, LLC | **FLORINA ALTSHILER, ESQ.** |

**NASH CONNORS PC**                                             **PHILIP M. GULISANO, ESQ.**
344 Delaware Avenue, Suite 400
Buffalo, New York 14202
Attorneys for Defendant Peak Industries, Inc.

**Mae A. D'Agostino, U.S. District Judge**

# ORDER

On February 21, 2017, Plaintiff commenced this action with the filing of a complaint against Defendants Alutiiq Diversified Services, LLC., and Chugach Industries, Inc., in New York state court. *See* Dkt. No. 2. Defendants removed the action to this Court on April 25, 2017. *See* Dkt. No. 1. On May 17, 2017, Defendant Chugach Industries filed a third-party complaint against Defendant Peak Industries. *See* Dkt. No. 10. Defendant Peak Industries then filed a counter-claim against Defendant Chugach Industries and a cross-claim against Defendant Alutiiq Diversified Services. *See* Dkt. No. 27. Subsequently, Defendant Alutiiq Diversified Services filed a cross-claim against Defendant Peak Industries, which the Court construed and accepted as an amendment to Defendant Alutiiq Diversified Services' answer. *See* Dkt. Nos. 48, 49. On December 12, 2018, this action was designated the lead case and was consolidated with *Guardino v. Peak Industries, Inc.*, No. 5:18-CV-933 (N.D.N.Y.). *See* Dkt. No. 50. On January 15, 2020, the parties filed a stipulation of discontinuance of all claims, cross-claims, and counter-claims against Defendant Chugach Industries and it was dismissed from this action. *See* Dkt. No. 103. Currently before the Court are Defendants Alutiiq Diversified Services' and Peak Industries' motions to preclude Plaintiff's expert testimony. *See* Dkt. Nos. 117, 118. For the following reasons, Defendants' motions are denied.

On February 24, 2014, Plaintiff, an employee of Fort Drum Family and Morale, Welfare, and Recreation, was tasked with cleaning Cabin 19 ("the cabin"), a visitor's cabin on the Fort

Drum campus. *See* Dkt. No. 2 at ¶ 17. Plaintiff alleges that the cabin was designed by Defendant Peak Industries and constructed by Alutiiq Diversified Services. *See id.* at ¶¶ 15-16. While descending from the loft area of the cabin by way of an attached ship ladder, Plaintiff grabbed onto to a baluster attached to the loft area. *See id.* at ¶ 22. Plaintiff alleges that the baluster dislodged as Plaintiff was holding onto it, causing her to fall approximately ten-and-a-half feet and sustain permanent and catastrophic industries. *See id.* at ¶ 23.

At trial, Plaintiff intends to introduce the opinions of Stephen Khanzadian and Thomas Trytek. *See* Dkt. Nos. 117-2, 117-3. Mr. Khanzadian and Mr. Trytek offer opinions regarding the design and construction of the cabin. *See id.* Defendants seek preclusion of Mr. Khanzadian's testimony arguing he is not a licensed engineer and therefore, is not qualified to opine about the proper design and construction of the cabin. *See* Dkt. No. 117-4 at 5; Dkt. No. 118 at ¶ 10. In the alternative, Defendants argue that Mr. Khanzadian and Mr. Trytek would offer cumulative testimony if both were permitted to testify at trial. *See* Dkt. No. 117-4 at 6; Dkt. No. 118 at ¶ 11.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. That Rule provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The party offering the testimony has the burden of establishing its admissibility by a preponderance of the evidence." *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 411 (S.D.N.Y. 2016). As the courts and Advisory Committee have made clear,

"the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee's Note. Moreover, "the Supreme Court has made clear that the district court has a 'gatekeeping' function under Rule 702—it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)).

In reviewing the admissibility of expert testimony, courts must determine whether the expert is qualified to testify. "Qualification 'may be based on a broad range of knowledge, skills, and training.'" *Mirena*, 169 F. Supp. 3d at 412 (quoting *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 172 (S.D.N.Y.2009)). "Courts within the Second Circuit have liberally construed expert qualification requirements." *Id.* (quotation omitted). "Although the qualification requirement is liberally construed, it is not a nullity." *Mancuso v. Consol. Edison Co. of N.Y.*, 967 F. Supp. 1437, 1442 (S.D.N.Y. 1997).

A district court must also determine whether the expert testimony is reliable. As the Second Circuit has explained,

> [T]he district court must determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered. In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case. In short, the district court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Amorgianos*, 303 F.3d at 265 (alterations, quotations, and citations omitted). In *Daubert*, the Supreme Court provided a non-exhaustive list of factors for a district court to consider when

4

determining the reliability of expert testimony, including: "1) whether the theory had been tested, 2) whether it had been subjected to peer review, 3) what the potential or known rate of error is, 4) what sort of standards control the technique's operation, [and] 5) whether the theory or technique has been generally accepted." *Mancuso*, 967 F. Supp. at 1441 (citing *Daubert*, 509 U.S. at 593-94) (other citations omitted). Courts have also considered other factors, such as whether an expert's testimony is based on research conducted independent of the litigation, and whether an expert "has unjustifiably extrapolated from an accepted premise to an unfounded conclusion." Fed. R. Evid. 702, Advisory Committee's Note. "In all cases, 'the test of reliability is flexible,' and a district court has 'the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *Mirena*, 169 F. Supp. 3d at 413 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999)).

"In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos*, 303 F.3d at 267. "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Id.* "The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Id.* (quotation and citation omitted). Disputes regarding the nature and strength of an expert's credentials, an expert's use or application of her methodology, or the existence or number of supporting authorities for an expert's opinion, go to the weight, not the admissibility of her testimony. *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995). The Second Circuit has held that an expert need not "back his or her opinion with published studies that unequivocally support his or her conclusions."

*Amorgianos*, 303 F.3d at 266.  "Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may 'go to the weight, not the admissibility' of the expert's testimony."  *Id.* (quoting *McCollock*, 61 F.3d at 1044).

On the other hand, "when an expert opinion is based on data, methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  *Id.*; *accord Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005).[1]  Furthermore, "it is critical that an expert's analysis be reliable at every step."  *Amorgianos*, 303 F.3d at 267.  Of course, "the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions."  *Id.* at 266 (citing *Daubert*, 509 U.S. at 595).  Nevertheless, "conclusions and methodology are not entirely distinct from one another."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Accordingly, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Id.* at 146 (citations omitted).  Finally, "[a]fter determining that a witness is qualified to testify as an expert as to a particular matter and that the opinion is reliable, Rule 702

---

[1] *See also Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358-60 (2d Cir. 2004) (holding that expert testimony that was speculative and unreliable was properly not considered by the district court on summary judgment); *Dreyer v. Ryder Auto. Carrier Group, Inc.*, 367 F. Supp. 2d 413, 416-17 (W.D.N.Y. 2005) (noting that "[a]n otherwise well-credentialed expert's opinion may be subject to disqualification if he fails to employ investigative techniques or cannot explain the technical basis for his opinion"); *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 887-89 (E.D.N.Y. 2004) (declining to consider plaintiff's expert's testimony in deciding pending motions for summary judgment based on a finding that the expert's testimony "is unreliable under Fed. R. Evid. 702 and the principles articulated in *Daubert* and its progeny," given that the expert (1) qualified his opinions, (2) failed to support his opinions with any methodology which the court could analyze, and (3) rested his opinions "upon nothing more than subjective belief and unsupported speculation").

requires the district court to determine whether the expert's testimony will 'help the trier of fact.'" *Mirena*, 169 F. Supp. 3d at 413 (quoting Fed. R. Evid. 702).

Defendants seeks preclusion of Mr. Khanzadian's testimony arguing that he is not a licensed engineer and therefore, is not qualified to opine about the proper design and construction of the cabin. *See* Dkt. No. 117-4 at 5; Dkt. No. 118 at ¶ 10. Defendants do not take issue with the reliability of Mr. Khanzadian's methods or the validity of the principles upon which he relied in forming his opinion. In response, Plaintiff argues that Mr. Khanzadian need not be a licensed engineer because his opinions relate solely to the construction of the loft railing system, an area in which Mr. Khanzadian has extensive training and experience. *See* Dkt. No. 121-6 at 3.

In his report, Mr. Khanzadian offered four opinions about the construction of the cabin at issue. *See* Dkt. No. 117-2 at 5-7. First, Mr. Khanzadian opined that the baluster which Plaintiff grabbed for support was improperly installed with a brad nail and was hazardous to individuals who used the loft area. *See id.* at 5. Mr. Khanzadian indicates that the baluster should have been installed with, at the very least, with a nail with a head or a screw. *See id.* at 5. Second, Mr. Khanzadian opines that Defendant Alutiiq deviated from the standard of care by attaching the balusters facing away from the inside of the loft. *See id.* at 6. Third, Mr. Khanzadian opined that Defendant Peak Industries should have provided explicit instructions with the kit on how to attach balusters. *See id.* at 6. Finally, Mr. Khanzadian stated that if the balusters could not be installed to support a person's weight, Defendants should have installed a grab bar or warning signs. *See id.*

It is clear from Mr. Khanzadian's report that his opinions relate solely to the installation of the balusters and relating safety features. *See id.* at 5-7. Mr. Khanzadian has over thirty five years of experience as a contractor, with a concentration on remodeling homes. *See* Dkt. No. 117-2 at

7

3. Mr. Khanzadian is the owner of his own construction company, is a member of a number of builders associations, and has reached the designation of graduate master remodeler.[2] *See id.* at 3-4. Finally, throughout his career he has installed and assembled railings for loft areas and other areas of a home. *See id.* at 3. Mr. Khanzadian's opinions, which relate to the installation of the balusters at issue, fall squarely within his specialized knowledge based on his years of experience in construction and home renovation. Accordingly, Defendants' motions to preclude Mr. Khanzadian's opinion is denied.

As to Defendants' alternative argument, the Court cannot determine whether Mr. Khanzadian's or Mr. Trytek's testimony is cumulative without the benefit of observing the evidence presented at trial. *See Cruz v. Kumho Tire Co.*, Nos. 8:10-CV-219, 8:12-CV-200, 2015 WL 2193796, *9 (N.D.N.Y. May 11, 2015) (citation omitted). Further, Plaintiff maintains that Mr. Khanzadian's testimony will be limited to the construction of the cabin, loft area, and baluster, while Mr. Trytek's testimony will address the design of the cabin. *See* Dkt. No. 121-6 at 4. These opinions, although they may overlap, would not be needlessly cumulative. Accordingly, the Court denies Defendants' motion to preclude Mr. Khanzadian's and Mr. Trytek's testimony without prejudice.

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** Defendants' motion to preclude the testimony Mr. Khanzadian and Mr. Trytek is **DENIED**; and the Court further

---

[2] This designation is given to builders who have been in the construction business for at least fifteen years, obtained advanced certifications, and completed industry-specific education. *See* Dkt. No. 117-2 at 4.

8

**ORDERS** that the Clerk of the Court shall serve a copy of this Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 29, 2020
      Albany, New York

Mae A. D'Agostino
U.S. District Judge